UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ERIK LUCHSINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:06CV628 LMB |
| | ) | |
| MICHAEL J. ASTRUE , | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S BRIEF
IN SUPPORT OF THE ADMINISTRATIVE DECISION
AND IN REPLY TO PLAINTIFF'S BRIEF

Nature of Action and Prior Proceedings

This suit involves an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title XVI. See also 42 U.S.C. § 405(g).

Plaintiff filed his applications for Social Security disability benefits on August 25, 1999, but the application was administratively denied (Tr. 75-78, 90). On March 6, 2001, following a hearing, an administrative law judge (ALJ) rendered a decision, finding Plaintiff was not "disabled" as defined by the Social Security Act (Tr. 12-24). On September 27, 2002, the Appeals Council denied Plaintiff's request for review (Tr. 2-3). However, Plaintiff appealed his denial to this Court, and the Commissioner voluntarily remanded his case for further consideration (Tr. 271-72). On December 19, 2005, an ALJ rendered a second decision, again finding Plaintiff was not disabled (Tr. 258-68). Thus, the ALJ's decision is the final decision of the Commissioner.

Statement of Facts

Plaintiff alleged that he became disabled in 1996, due to post-traumatic stress disorder and pain (Tr. 260). Plaintiff was born in 1951, meaning he was 48 years old at the time he filed his application (Tr. 90, 259). He had the equivalent of a high school education, having obtained this general equivalency degree (GED) (Tr. 259, 625). Past relevant work included jobs as a carpenter, contractor, and janitor (Tr. 259). Defendant adopts Plaintiff's statement of facts, with the following additions:[1]

6.	Eugene Adelmann, M.D., examined Plaintiff for the second time on July 21, 2000, after having obtained MRI scans of Plaintiff's brain and spine (Tr. 201-02). He noted that his earlier examination of Plaintiff had observed signs of pain, difficulty walking without a cane, and so on (Tr. 201-02). Dr. Adelmann noted that Plaintiff's MRI scan was "unremarkable," and that his cervical and lumbosacral spine films showed spondylitic and degenerative changes, but no cord compression (Tr. 201). On reexamination of Plaintiff, Dr. Adelmann noted that Plaintiff winced, but his neck had fair mobility, cranial nerve examination showed no abnormalities, and there did not appear to be any limb weakness, spasicity, or clonus (Tr. 201). He also noted normal muscle tone in Plaintiff's arms and legs (Tr. 201). Dr. Adelmann asked Plaintiff to walk, and he noted that Plaintiff was "flinging" his arms "to and fro," but that he "maintain[ed] a narrow based gait quite well" (Tr. 202). He added, "In fact[,] I can get him to stand on either leg unassisted" (Tr. 202). Dr. Adelmann diagnosed Plaintiff with lower back pain and mild degenerative arthritis

---

[1] Local Rule 7-4.01(E) requires a memorandum in support of a motion for summary judgment to have a statement of uncontroverted material facts set forth in separately numbered paragraphs. The Rule also requires each memorandum in opposition to include a statement of material facts as to which the party contends a genuine issue exists. The opposing party also shall note all disputed facts by indicating the paragraph number from movant's statement of facts.

(Tr. 202). He added that he did not believe Plaintiff had ataxia or spasticity, and that "[m]any of his complaints are subjective and out of proportion to clinical findings" (Tr. 202).

9. On November 20, 2000, Dr. Corvalan observed that Plaintiff had returned to the clinic. He observed that Plaintiff was still drinking, although he claimed to have cut back (Tr. 173). Plaintiff smelled of alcohol (Tr. 173). Dr. Corvalan also rendered an opinion of Plaintiff's work-related ability, indicating that he had "marked" restrictions in several areas of functioning, such as remembering even simple instructions, poor concentration, and responding to changes in the workplace (Tr. 173).

18. Plaintiff was admitted for detoxification at the Veteran's Administration (VA) hospital on April 29, 2002 (Tr. 481). His cousin had brought him in, intoxicated and cursing at the staff (Tr. 481). His blood alcohol level was 231 (Tr. 481). He claimed he had only two beers, and that he drank no more than twelve per week (Tr. 482). He said he spent his day using his computer, "surfing pornography and gambling sites" (Tr. 482). On admission, Plaintiff was noted to have an abnormal appearance and abnormal mood and affect (Tr. 483-84). On the other hand, he was also described as having normal thought process, memory, concentration, and orientation (Tr. 484).

## Statement of the Issue

The issue is whether the final decision of the Commissioner is supported by substantial evidence on the record as a whole.

## Argument

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has

3

lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 423(d) and § 1382c(a)(3)(A). The Supreme Court in Barnhart v. Walton, 535 U.S. 212 (2002), upheld the Commissioner's interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for 12 months. As Plaintiff correctly noted in his brief, the period under review in this case is limited. The relevant period in this case is begins at the time of Plaintiff's protective filing for benefits, on August 25, 1999 (Tr. 90, 258). This is because, under Title XVI, a claimant may not receive benefits for any period prior to the filing of his application. See 20 C.F.R. §§ 416.330 and 416.335 (2006). Therefore, the relevant period under consideration begins with the date of Plaintiff's application, August 25, 1999; until the date of the ALJ's decision, December 19, 2005 (Tr. 90, 268).

The Commissioner's regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims. See 20 C.F.R. §§ 404.1520; 416.920 (2006). As noted above, a claimant has the burden of proving disability by establishing a physical or mental impairment which will persist for at least 12 consecutive months and prevents the claimant from engaging in substantial gainful activity. See Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994); Wiseman v. Sullivan, 905 F.2d 1153, 1155 (8th Cir. 1990); 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A). If a claimant establishes that he is not able to return to his past relevant work at step four of the sequential evaluation process, the burden of production shifts to the Commissioner to show that the claimant can perform work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520; 416.920 (2006). The Commissioner may meet this burden by relying on

4

vocational expert testimony or application of the medical-vocational guidelines (guidelines). In this case, the ALJ found that Plaintiff had a limited residual functional capacity, but that he still retained the ability to perform his past relevant work as a janitor (Tr. 267). Moreover, even if he were unable to work a janitor, the ALJ found that Plaintiff's age, education, work history, and residual functional capacity would permit him to make an adjustment to perform other work found in significant numbers in the national economy, such as a cashier/checker, cashier II, and inspector/packer (Tr. 266).

I.  The ALJ Correctly Assessed the Credibility of Plaintiff's Subjective Complaints, Including Proper Consideration of the Medical Opinions of Record

Plaintiff argues that the ALJ disregarded evidence favorable to him in assessing his credibility and residual functional capacity. Pl.'s Br. 19. In other words, Plaintiff generally argues that the ALJ did not correctly analyze the credibility of his subjective complaints in accordance with Social Security Ruling 96-7p and Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). However, the issue is not whether the evidence could have supported Plaintiff's view of the relevant evidence, but whether the ALJ's conclusion regarding his credibility and residual functional capacity was sufficiently based in substantial evidence. Contrary to Plaintiff's allegation, the ALJ did not "disregard" evidence, but rather reasonably concluded based on the evidence that Plaintiff's subjective claims were not fully credible. The ALJ noted that there was little objective evidence to explain Plaintiff's rather extreme physical complaints, that Plaintiff had been frankly untruthful regarding his alcohol and substance abuse (Tr. 438, 487-82, 654-55), that Plaintiff testified that his mental state was "fine" as long as he took his medications (Tr. 644), and that Plaintiff's very poor work history meant that Social Security benefits would result in more income that Plaintiff had ever earned working (Tr. 80, 262-64). Once the ALJ has made

5

his decision, as the Eighth Circuit recently stated, a Court should "disturb the ALJ's decision only if it falls outside the available 'zone of choice.' . . . A decision is not outside that 'zone of choice' simply because we may have reached a different conclusion had we been the fact finder in the first instance." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted).

Plaintiff nevertheless first contends the ALJ gave too much weight to the opinion of Dr. Adelmann, the consultative physician who examined Plaintiff on two occasions, and who had ordered a number of tests for Plaintiff in an effort to determine the origin of his complaints (Tr. 211-13). Pl.'s Br. 19-20. Plaintiff overlooks that Dr. Adelmann's opinion was relevant because it suggested that there was little medical basis for his subjective complaints, a fact clearly borne out by various diagnostic testing and scanning Plaintiff underwent, which showed only minor problems. Indeed, Dr. Adelmann noted that Plaintiff's MRI scans were normal (Tr. 201). His examination of Plaintiff also revealed suggestions that Plaintiff was not credible as the nature and extent of his physical limitations. He noted that Plaintiff claimed to have difficulty walking, but he did not have any limb weakness or spasms (Tr. 201). He also seemed to observe that Plaintiff appeared to be exaggerating his gait, as he noted that Plaintiff was flinging his arms "to and fro," but that he actually maintained a "narrow based gait quite well" (Tr. 202). He also noted that Plaintiff was able to stand on one leg without assistance (Tr. 202). Plaintiff cites no evidence suggesting Dr. Adelmann was incorrect in this conclusion that his complaints exceeded the objective evidence. The ALJ therefore properly relied on the doctor's expert analysis in rendering his decision, even though he was not a treating source. See, for example, Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) ("We have allowed an ALJ to substitute the opinions of non-treating physicians in several instances, including where a treating physician renders

inconsistent opinions that undermine the credibility of such opinions" (citations and internal quotes omitted)); Tindell v. Barnhart, 444 F.3d 1002, 1005-06 (8th Cir. 2006) (ALJ appropriately relied on non-examining source after providing specific reasons for discounting treating physician opinion).

Plaintiff next argues the ALJ overlooked the opinion of Steven Brenner, M.D., a physician from the VA, who, during his first visit with Plaintiff, indicated that Plaintiff was disabled because of inability to walk (Tr. 189). Pl.'s Br. 20. However, at the time Dr. Brenner made this statement, it was his first visit with Plaintiff. He was therefore not a treating physician. See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) ("Vega's March letter . . . is not entitled to controlling weight as a medical opinion of a treating source. When she filled out the checklist, Vega had only met with Randolph on three prior occasions.") (citation omitted). Moreover, Dr. Brenner was apparently unaware that many of the very same tests he planned to give Plaintiff, such as brain MRI, had recently been found normal or noncontributory to his complaints (Tr. 201, 206-09). In other words, there is no reason to attribute Dr. Brenner's opinion more weight than Dr. Adelmann, as he had not had any experience with Plaintiff, nor had he performed any further diagnostic testing or analysis. Furthermore, Dr. Brenner's opinion that Plaintiff could not work is not controlling on the ALJ, even if he had been a "treating physician" at the time he rendered the opinion. See Baker v. Barnhart, 257 F.3d 882, 894 (8th Cir. 2006) ("However, a physician's opinion regarding a claimant's ability to find work within a particular classification is not a 'medical opinion.'").

Plaintiff argues that the ALJ gave insufficient weight to the opinion of his treating psychiatrist, Dr. Corvalan, who repeatedly indicated that Plaintiff's post-traumatic stress disorder

7

was disabling (Tr. 173, 486, 500-03). Pl.'s Br. 20. The opinions of a treating physician are often entitled to substantial weight when they are well-supported and consistent with other evidence, but the Commissioner may not assign controlling weight to a treating physician's opinion that is not supported by medically acceptable laboratory and diagnostic techniques, or is inconsistent with the other substantial evidence of record. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (citing 20 C.F.R. §404.1527(d)(2)). The ALJ in this case acknowledged Dr. Corvalan's opinion, but determined that she could not assign it controlling weight (Tr. 266).

As the ALJ pointed out, on one of the occasions Dr. Corvalan's treatment notes indicated that Plaintiff had "marked" restrictions in his ability to understand simple instructions and so on, he also noted that Plaintiff smelled of alcohol (Tr. 173). Other of Dr. Corvalan's treatment notes appear to suggest that Plaintiff complained of various difficulties such as hallucinations and poor short term memory, but indicated that he was smoking marijuana daily (Tr. 438). The ALJ determined that Dr. Corvalan appeared to be assessing Plaintiff with limitations related to intoxication. While the ALJ ultimately did not find that Plaintiff suffered from a substance abuse-related disability,[2] the fact that Dr. Corvalan rendered several opinions of disability on days Plaintiff appeared to have been intoxicated rendered those opinions less credible for

---

[2] Had the ALJ found Plaintiff was disabled, she would have had to continue her analysis of Plaintiff's case to determine if substance abuse was "material" to that disability. Since 1996, Congress has disallowed the receipt of disability benefits when alcoholism or drug addition would be a "contributing factor material to the Commissioner's determination" of disability. See 42 U.S.C. § 423(d)(2)(C) (2006). The materiality analysis is triggered when a claimant is found disabled and there is evidence of substance abuse. The ALJ is then required to determine whether the claimant would still be found disabled absent the effects of substance abuse. See 20 C.F.R. §§ 404.1535; 416.935 (2006). If Plaintiff is found not disabled excluding the effects of drug and alcohol abuse, then the abuse is a material factor, and the claimant will not receive benefits. In this case, the ALJ found Plaintiff not disabled notwithstanding evidence he abused alcohol during the relevant period, and this materiality analysis was not triggered.

purposes of Social Security. The ALJ also noted that Plaintiff appeared to have serious credibility problems, given his very poor work history and inconsistent statements regarding his activities and substance abuse, and that Plaintiff's complaints to Dr. Corvalan were not entirely reliable. The ALJ determined that Dr. Corvalan appeared to have been simply adopting many of Plaintiff's subjective claims to him. Evidence supports the ALJ's conclusion in this regard. For instance, on April 30, 2002, Dr. Corvalan stated that Plaintiff was "unable to concentrate" enough to hold a job, but treatment notes from earlier the same month indicated that Plaintiff had normal concentration, concentration, thought process, and orientation (Tr. 484, 486). Because the ALJ's rationale for deciding not to defer to Dr. Corvalan's opinion is sufficiently supported by the evidence, it should not be disturbed on Court review. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion.").

Plaintiff argues that there was "no evidence" supporting Plaintiff's conclusion that Plaintiff could perform the lower semi-skilled range of sedentary work, citing a VA finding that post-traumatic stress disorder rendered him unable to work. Pl.'s Br. 20-21. However, as the ALJ noted, the VA decision is not controlling on the Commissioner, because the VA has very different criteria for disability (Tr. 266, 626). See 20 C.F.R. §§ 404.1504, 416.904. See also Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996) (whether a claimant is disabled under state law is not binding on the Commissioner of Social Security); Jenkins v. Chater, 76 F.3d 231, 233 (8th Cir. 1996) (disability determination by the VA is not binding on an ALJ). Plaintiff himself cited no evidence of any specific mental limitation which would render him unable to perform this relatively simple work of SVP 3, save his own non-credible subjective claims. See Simmons

9

v. Chater, 950 F.Supp. 1501, 1506-07 (N.D.Ok..,1997) (SVP of 3 does not conflict with the Commissioner's definition of "unskilled" work). It is the Plaintiff's burden, not the Commissioner's, to demonstrate his limitations. See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) ("It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC.").

In summary, the ALJ identified inconsistencies in the record as a whole which provided a sufficient basis upon which to discount Plaintiff's allegations of disabling impairments. See, e.g., Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989). Where, as here, the ALJ's decision is adequately explained and supported, the Court must affirm. See Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006).

II. The ALJ Properly Determined Plaintiff's Residual Functional Capacity, and Properly Determined That He Retained the Capacity To Perform Other Work Found in Significant Numbers in the National Economy

Having found that Plaintiff was only partially credible as to the alleged extent of his impairments, the ALJ then went on to determine Plaintiff's residual functional capacity at step four of the sequential evaluation process. The ALJ determined Plaintiff retained the residual functional capacity to engage in light[3] work with a specific vocational preparation (SVP) of 3 or less (Tr. 267). He could lift or carry up to twenty pounds occasionally and ten pounds frequently, stand and walk for at least six hours a work day, and sit throughout the workday (Tr. 267). He could push or pull on arm or leg controls (Tr. 267). See McKinney v. Apfel,

---

[3] "Light" work involves lifting no more than 20 pounds on at a time with frequent lifting or carrying of items that weigh up to 10 pounds. It often involves a "good deal" of standing and walking, or, alternatively, pushing and pulling of arm and leg controls. A person who can perform light work can also perform work at the "sedentary" level of exertion. See 20 C.F.R. §§ 404.1567(b); 416.967(b) (2006).

10

228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations). See also 20 C.F.R. § 416.945; SSR 96-8p

Having properly determined Plaintiff's residual functional capacity, at step four of the sequential evaluation process, the ALJ determined that Plaintiff retained the residual functional capacity to perform his past relevant work as a janitor (Tr. 265, 267). "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." See Lowe v. Apfel 226 F.3d 969, 973 (8th Cir. 2000), citing Jones v. Chater, 86 F.3d 823, 826 (8th Cir.1996); see also 20 C.F.R. § 404.1520(a)(4)(iv), (f) (2004), 20 C.F.R. § 416.920(a)(4)(iv)(f)(2004).

The ALJ also continued the sequential evaluation process to step five, in order to determine whether there was other work Plaintiff could perform in the national economy. Therefore, the burden shifted to the Commissioner to produce evidence of some other type of substantial gainful employment Plaintiff could perform given his residual functional capacity. See Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). See also 20 C.F.R. §§ 404.1520(f); 416.920(f) (2006). The ALJ relied on a vocational expert to determine what jobs existing in the national economy could be performed by an individual of the Plaintiff's age, education, past relevant work experience, and residual functional capacity. The vocational expert further testified that a person with Plaintiff's residual functional capacity, age, education, and work history could perform other work found in significant numbers in the national

economy, such as a cashier/checker, cashier II, and inspector/packer (Tr. 266). "A vocational expert's response to a hypothetical question provides substantial evidence where the hypothetical question sets forth with reasonable precision the claimant's impairments." See Starr v. Sullivan, 981 F.2d 1006, 1008 (8th Cir. 1992).

Plaintiff argues that, in response to a hypothetical question which incorporated his treating psychiatrist's opinion, the vocational expert testified that he could not work. Pl.'s Br. 21. Although the hypothetical question must set forth with reasonable precision the claimant's impairments, Starr v. Sullivan, 981 F.2d 1006, 1008 (8th Cir. 1992), it need only include those impairments and limitations found credible by the ALJ. See Pertuis v. Apfel, 152 F.3d 1006, 1007 (8th Cir. 1998); Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997). "Discredited complaints of pain, however, are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them." Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005). As noted above, the ALJ properly determined that Dr. Corvalan's opinion could not be afforded controlling weight, and therefore, limitations advocated by that doctor were properly excluded from Plaintiff's residual functional capacity .

## Conclusion

Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations. Substantial evidence on the record as a whole supports the Commissioner's decision. Accordingly, the Commissioner's decision should be affirmed.

>Respectfully submitted,
>
>CATHERINE L. HANAWAY
>UNITED STATES ATTORNEY
>
>  s/ Jane Rund
>JANE RUND, Bar #47298
>Assistant United States Attorney
>111 S. 10th Street, Suite 20.333
>St. Louis, Missouri 63102
>(314) 539-2200
>(314) 539-2777 FAX
>
>OF COUNSEL
>Frank V. Smith III
>Chief Counsel, Region VII
>Social Security Administration
>
>By
>  Kevin B. Murphy, Bar # 46372
>  Assistant Regional Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2007, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Philip Senturia, Attorney for Plaintiff, Gateway Legal Services, Inc., 200 N. Broadway, Suite 950, St. Louis, Missouri 63102.

> s/ Jane Rund
>JANE RUND #47298
>Assistant United States Attorney